**LIBERTY MUTUAL INSURANCE CO.,**
Appellant,

v.

**E. B. HOPKINS, Appellee.**

No. 6853.

Court of Civil Appeals of Texas.

Dec. 7, 1967.

Rehearing Denied Jan. 3, 1968.

Howell, Cobb, Orgain, Bell & Tucker, Beaumont, for appellant.

John Seale, Jasper, for appellee.

HIGHTOWER, Chief Justice.

This is a workmen's compensation case in which plaintiff, E. B. Hopkins, recovered benefits for total and permanent incapacity in trial before a jury. The primary question before us is whether or not plaintiff's injury was sustained in the course and scope of his employment.

Plaintiff was an employee of Kirby Lumber Corporation. During working hours, about 9:15 on the morning of Wednesday, August 5, 1964, plaintiff proceeded to get a drink of water from a drinking fountain maintained by Kirby Lumber Corporation, when he was struck and beaten by his fellow employee, George Nelson.

In answer to Special Issues Nos. 2 and 3 respectively, the jury found that plaintiff received an accidental injury and that it was sustained in the course and scope of his employment.

Defendant's theory of the case, which he argues by various points of error, is that the facts, as presented by plaintiff, reveal that there is no evidence that plaintiff's injury was accidental, that it was sustained while he was engaged in his employer's business or that it was of such kind or character as had to do with and originated in his employer's work or business.

Plaintiff testified that as he approached the drinking fountain, he saw George Nelson standing about 4 feet from it with his back toward plaintiff, eating a sandwich. Plaintiff went between Nelson and the fountain, obtained his water, and, as he turned around, Nelson struck him, knocking him down. He then proceeded to beat him on the ground with a piece of lumber. Plaintiff testified that the only words uttered at that time were "he [Nelson] said he would teach me a lesson about stepping around in front of me, I heard him say that." He further testified, essentially, that prior to that occasion, he and Nelson had always been on friendly terms, never having had a cross word between them. Under repeated examination, he could give no other explanation of why Nelson had struck him.

■■ We recognize that the mere fact that an employee is injured by another employee while at work for his employer does not in and of itself make the injury compensable. A reading of Article 8309, Sec. 1, Vernon's Ann.Civ.St. makes this ap-

parent. The foregoing testimony of plaintiff provided the jury with ample evidence to believe that this was not the case. It seems clear that the dispute arose out of something, getting a drink of water, which was incidental to the employment itself. The evidence appears clear that George Nelson became angry when he thought plaintiff was stepping ahead of him to get to the water fountain—trying to go out of turn. This water fountain had been placed on the premises by the employer for the use of its employees. Obviously, an employee would not step out of the course of his employment each time he went to get a drink of water. It seems clear that if plaintiff had fallen on the way to the water fountain, or had bumped his head while leaning over for a drink and injured himself, his injury would have been compensable. By analogy, it would seem that an injury caused by a dispute as to which employee got to the water fountain first would be compensable.

A strikingly similar case is that of Commercial Standard Ins. Co. v. Austin, Tex. Civ.App., 128 S.W.2d 836. That case involved a situation where the employees were "fishing" logs from the bottom of a mill pond and loading them on boats, to then be unloaded by a chain. When one employee tried to push his boat ahead of another and out of turn, this angered another employee and a dispute arose and an injury resulted. The court held that this was an injury resulting from a controversy growing out of the employment.

The rule is stated in 62 Tex.Jur.2d 658 as follows:

Acts essential to the life, comfort, and convenience of the employee while at work, though they are strictly personal to himself and not acts of service, are incidental to the service. The fact that the employee is human is necessarily taken into consideration. Accordingly, an employee may in the course of his employment do any act of a personal nature reasonably necessary to his health and comfort, such as quenching thirst and relieving hunger, or taking a bath or medicine, and injuries sustained in the performance thereof arise out of the employment and are compensable.

See also Aetna Casualty & Surety Co v. England, Tex.Civ.App., 212 S.W.2d 964 and McClure v. Georgia Cas. Co., Tex.Com. App., 251 S.W. 800.

■ We hold the evidence establishes that plaintiff's injury was accidental within the meaning of Article 8309a, Section 1 thereof, and that it occurred while plaintiff was engaged in his employer's business and had to do with and originated in his employer's business.

We do not discuss defendant's points of error to the effect that the answers to the aforesaid issues 2 and 3 were against the great weight and preponderance of the evidence for the reason that defendant did not attempt to brief said points. Should we have, the same would have been overruled.

We treat the next series of defendant's points of error. As previously indicated, defendant vigorously contested injury in the course of employment, and stresses that the injury grew out of a personal incident between the two men.

The court submitted the issue of injury in the course of employment, but submitted no defensive issues of defendant's. Defendant requested:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that E. B. Hopkins' injury, if you have so found, *was not caused* by his willful intention to unlawfully injure some other person?

SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that E. B. Hopkins' injury, if you have so found, *was caused* by his willful intention to unlawfully injure some other person?

## SPECIAL INSTRUCTION A

An injury, (as referred to in this charge) has to do with and originates in the work, business, trade or profession of the employer, when it results from a risk or hazard which is necessarily, or ordinarily, or reasonably inherent in, or incident to, the conduct of such work or business.

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that George Nelson injured E. B. Hopkins, if you have so found, because of matters which were connected with E. B. Hopkins' employment?

## SPECIAL INSTRUCTION B

In connection with the foregoing Special Issue (3), you are instructed that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that plaintiff was not injured because of matters not connected with his employment.

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that George Nelson *injured* E. B. Hopkins because of matters personal to him and not directed against Hopkins as an employee, or because of his employment?

## SPECIAL INSTRUCTION C

In connection with the foregoing Special Issue, you are instructed that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that George Nelson did not injure E. B. Hopkins because of matters personal to him and not directed against Hopkins as an employee, or because of his employment.

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that George Nelson *did not* injure plaintiff, E. B. Hopkins, because of matters personal to him and not directed against Hopkins as an employee, or because of his employment?

## SPECIAL INSTRUCTION D

In connection with the foregoing Special Issue, you are instructed that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that George Nelson did not injure plaintiff, E. B. Hopkins, because of matters personal to him and not directed against Hopkins as an employee, or because of his employment.

## SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that the injury received by E. B. Hopkins, if you have so found, did not have to do with or originate in the work, business or trade of his employer?

Defendant's pleadings had asserted all the defensive matters to which the foregoing special issues and instructions · relate. Explanatory of why defendant again urges the failure to submit the same as error in this court, a résumé of the substance of pertinent testimony follows:

George Nelson testified, contrary to plaintiff's version, that the fight started thusly:

A.  Well, I was over on my job bunching off a load of lumber, and Mr. E. B. [plaintiff] walked up to me and asked me did I ask his wife to kiss myself, and I told him, 'No.' And he told me he would slap me.

Q.  Did I understand you to say that he was going to slap something out of you?

A.  Yes, sir, he did.

Q.  What happened next?

A.  Well, that's when the fight started, when the fight was.

Q. Did he try and hit you?

A. He tried to slap me.

Q. Did you hit him?

A. Yes, I did.

This brief testimony, together with other not quoted, shows that plaintiff started the fight with Nelson because of some alleged insult by Nelson to plaintiff's wife a few days prior to the incident. Nelson steadfastly insisted that plaintiff started the fight. He was equally insistent that it did not have anything to do with the men's work or anything at the job. He denied that it had anything to do with an argument over the water fountain as first hereinbefore testified to by plaintiff.

Eugene Fobb, George Nelson's step father and a fellow employee, testified that he had a conversation with plaintiff after the fight:

He told me, he said he was going to kill that so and so. And I asked him, I said, 'What's the trouble,' and he told me, and he cursed, you know, about his wife, she wasn't doing no such thing—

Well he told me he told his wife to kiss you-know-what.

Yes, sir, and I asked him when did that happen; he said, 'Sunday.'

He stated that on the day of the fight, Wednesday, he asked plaintiff why he waited three days before bringing it up on the job, but the plaintiff didn't answer him. In brief, his testimony was virtually that plaintiff told him that he had attacked George Nelson because of personalities involving plaintiff's wife.

Lathana Irvin, a follow employee of plaintiff, testified that he had had a conversation with plaintiff the day before the fight and that plaintiff mentioned that Nelson had made a pass, a word out of the way to his wife. He said that Nelson had spoken something to his wife that he didn't like. He testified that he saw most of the

fight but that the mill was noisy and he couldn't hear what they were saying. He didn't remember who hit who first.

The definition of "injury sustained in the course of employment" which was contained in the court's charge went further than the usual definition of such term as used in workmen's compensation charges, and set out the full definition as provided by Section 1 of Article 8309, Vernon's Civil Statutes of Texas thusly:

You are instructed that by the term "injury sustained in the course of employment" as used in this charge shall not include: (1) An injury caused by an act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from an act of God responsible for the injury than ordinarily applies to the general public. (2) An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment. (3) An injury received while in a state of intoxication. (4) An injury caused by the employee's wilful intention and attempt to injure himself or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer upon the employer's premises or elsewhere.

Obviously, defendant is complaining because it did not have separate instructions and separate special issues covering the very same thing that was covered by the definition of "injury sustained in the course of employment" quoted above. In order for the jury to answer Special Issue No. 3 "Yes", it was necessary, because of the court's definition of "injury sustained in the course of employment", for the jury to find from a preponderance of the evidence that

plaintiff's injury was not (2) caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment, or (4) caused by the employee's wilful intention and attempt to injure himself or to unlawfully injure some other person. If the trial court had given defendant's requested issues, he would have simply been asking the jury the same questions again. If the trial court had given defendant's requested instructions, he would simply have been telling them something he had already told them in his definition of "injury sustained in the course of employment". The same thing must be said of defendant's other special requested issues and instructions inquiring as to whether plaintiff's injury was caused by his wilful intention to unlawfully injure some other person. It was held in Texas Employers' Insurance Association v. Gill, Tex.Civ.App., 252 S.W. 850, that where the Court by definition charged the jury that the term "injury sustained in the course of employment" does not include an injury caused by the act of a third person for personal reasons, it is not necessary to then submit an issue as to whether the man was injured by a third person for reasons personal to himself. Also see Maryland Casualty Company v. Smithson, Tex.Civ. App., 341 S.W.2d 951.

Of course, it is recognized law that a trial court need not submit an issue both affirmatively and negatively. Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314. It is also the law that the trial court is not required to submit two issues covering the same subject matter, and on both of which the burden is upon the same party. Pacific Employers Ins. Co. v. Brasher, Tex.Civ.App., 234 S.W.2d 698. It was plaintiff's burden to negative subdivisions (2) and (4) of Section 1 of Article 8309, and the charge as submitted properly placed such burden. Had the trial court used only the abbreviated definition of "injury sustained in the course of employment", then it would have been necessary to submit separate issues on subdivisions (2) and (4), and these issues would have to place the burden of proof on the plaintiff. Such was not necessary. Guest v. Guest, Tex.Civ.App., 235 S.W.2d 710; Liberty Mutual Ins. Co. v. Taylor, Tex.Civ.App., 244 S.W.2d 350. The line of cases such as Consolidated Underwriters v. Scott, Tex. Civ.App., 272 S.W. 520; Cherry v. Magnolia Petroleum Co., Tex.Com.App., 45 S. W.2d 555; Texas Indemnity Ins. Co. v. Cheely, Tex.Civ.App., 232 S.W.2d 124; American General Insurance Co. v. Williams, 149 Tex. 1, 227 S.W.2d 788; Williams v. Trinity Universal Ins. Co., Tex.Civ.App., 309 S.W.2d 850; Texas Employers' Ins. Ass'n v. White, Tex.Civ.App., 68 S.W.2d 511 and Texas General Indemnity Co. v. Bottom, Tex., 365 S.W.2d 350, are not in point. Accordingly, defendant's points of error relating to the court's failure to submit its aforesaid special issues and instructions are overruled.

Defendant's last point of error is addressed to Special Issue No. 7 in the court's charge, which was:

## SPECIAL ISSUE NO. 7

What do you find from a preponderance of the evidence to be the duration of such total incapacity, if any you have found? Answer by stating "Permanent" or by stating the number of weeks, if any, or answer "None."

Defendant urges that the court, by instructing the jury in said issue to answer "none" if it found no incapacity, erroneously placed the burden on the defendant to prove by a preponderance of the evidence that plaintiff had no total disability. Thus, defendant does not object to the form of the issue but objects to the form of the suggested answer. This objection is met by the following language in Rule 277, Texas Rules of Civil Procedure:

\* \* \* the court may submit disjunctively in the same question two inconsistent issues where it is apparent from

the evidence that one or the other of the conditions or facts inquired about necessarily exists. For example, the court may, in a workmen's compensation case, submit in one question whether the injured employee was permanently or only temporarily disabled.

There is nothing improper about this suggested form of answer, and it could not possibly be harmful to defendant. The point is overruled.

Judgment affirmed.